UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ROBERT COSCIA,                                       :
                                                     :          **MEMORANDUM & ORDER**
                                        Plaintiff,   :
                                                     :          08-CV-3042 (DLI)
            -against-                                :
                                                     :
MICHAEL J. ASTRUE,                                   :
Commissioner of Social Security,[1]                  :
                                                     :
                                        Defendant.   :
----------------------------------------------------------x
**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff Robert Coscia filed an application for disability insurance benefits under the Social Security Act (the "Act"), 42 U.S.C. § 301 *et seq*, on February 8, 2006, alleging a continuous disability beginning September 29, 2005. (Administrative Record ("A.R.") 58–60.) In a decision dated May 2, 2006, the Commissioner of Social Security (the "Commissioner") denied Plaintiff's application. (*Id*. at 32–35.) Plaintiff requested and received a hearing, which was held before an administrative law judge ("ALJ") on February 6, 2007. (*Id*. at 131, 399–425.) In a decision dated March 26, 2007, the ALJ concluded Plaintiff was not disabled within the meaning of the Act. (*Id*. at 14–24.) On June 19, 2008, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.

On July 25, 2008, Plaintiff brought the instant action challenging the Commissioner's decision. (*See generally* Compl. 1-2.) Pursuant to Federal Rule of Civil Procedure 12(c), the Commissioner moves for judgment on the pleadings, seeking affirmation of his determination that Plaintiff was not disabled. (*See generally* Docket Entry No. 11 ("Def. Mem.").) Plaintiff cross-moves for judgment on the pleadings, seeking remand solely for the calculation of benefits,

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Michael J. Astrue shall be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this action.

1

or, alternatively, remand for further evidentiary proceedings. (*See generally* Docket Entry No. 12 ("Pl.'s Mem.").) For the reasons set forth below, Defendant's motion is denied, Plaintiff's motion is granted in part and denied in part, and the case is remanded to the Commissioner for further evidentiary proceedings.

## I. BACKGROUND

### A. Non-Medical and Testimonial Evidence

Plaintiff was born on January 12, 1953 in Flushing, New York, and has a high school degree. (A.R. 403–04.) Beginning in 1973, he worked in an orange juice warehouse, first as a utility worker and later as a forklift operator. (*Id*. at 404–08.) The former involved transporting juice orders and performing maintenance and electrical work. (*Id*. at 409–11.) The latter, according to Plaintiff's testimony, involved between five and seven hours a day of forklift driving, with the remaining hours spent moving heavy items by hand. (*Id*. at 406–08.) Plaintiff further testified that the forklifts required constant gear shifting. (*Id*. at 407.)

On September 29, 2005, Plaintiff injured his back and neck after the forklift he was driving backed over a block of wood. (A.R. 408–09.) Plaintiff stopped working and applied for social security benefits, stating that he was disabled and unable to work due to his injuries. (*Id*. at 58–62.) At the hearing, Plaintiff testified that he could not turn his head to the right, making it difficult for him to drive, and that he soaks his fingers in hot water because they are stiff in the mornings. (*Id*. at 412, 420.) He claimed that the heaviest amount he can pick up and carry a short distance is between five and ten pounds, and that he cannot sit or stand for more than fifteen to twenty minutes due to back pain and stiffness. (A.R. 412, 419.) Additionally, Plaintiff stated that if he sits for more than twenty minutes, he has to get up to walk around. (*Id*. at 412.) Finally, he testified he has trouble hearing in both ears. (*Id*. at 423.)

With respect to his daily routine, Plaintiff testified that after waking, he dresses himself and washes with difficulty, makes himself breakfast, walks a block to the deli, reads the paper, calls his parents, watches television, and does "light dusting." (A.R. 415–16.) He does laundry once or twice a week and has his girlfriend over to help clean and carry items he is unable to carry himself. (*Id.*) Plaintiff stated that: his grocery shopping is limited to daily needs; his girlfriend and mother cook for him; he lives by himself; he attends church occasionally; and he goes to the movies but has difficulty sitting for the full length of a movie. (*Id.* at 403, 416–18.) Plaintiff also testified that he used to enjoy woodworking and car mechanics but can no longer do either, and he swims in the ocean for exercise in the summer. (*Id.* at 418–19.)

### B. Medical Evidence

#### 1. Treating Examiners

On February 17, 1998, Dr. Phillip Abessinio ordered a Magnetic Resonance Image ("MRI") of Plaintiff's cervical spine. (A.R. 141.) The MRI revealed central disc herniations at C3-C4, C4-5 and C5-6 with a "narrowing [of] the subarachnoid space[2] but without impingement upon the cord." (*Id.* at 140.)

On December 20, 1999, Plaintiff sustained an injury at work "while pulling a case [of orange juice] off a pallet" and complained of pain in the neck, right arm and shoulder region. (A.R. 182.) On December 30, 1999, he saw Dr. Raymond Shebairo, an orthopedic surgeon, who

---

[2] The space between the middle and innermost membranes surrounding the brain and spinal cord. 5 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE S-336 (Matthew Bender ed., 28th ed. 1995) [hereinafter SCHMIDT].

3

assessed a cervical radiculopathy[3] and rotator cuff[4] tendonitis with impingement.[5] (*Id.*) On March 30, 2000, plaintiff began physical therapy for his shoulder. (*Id.* at 178.) On April 4, 2000, Dr. Shebairo recommended that Plaintiff continue physical therapy and reported that Plaintiff "has persistent discomfort in his neck and shoulder region." (*Id*. at 181.)

On June 1, 2000, Dr. Lewis Lane, an orthopedist, examined plaintiff for "constant pain" and inability to close the long and ring fingers in both hands. (A.R. 179–80.) Dr. Lane found tenderness over Plaintiff's A-1 pulley[6] of the long and ring fingers bilaterally. He diagnosed a "[b]ilateral chronic trigger finger[7] of [the] right long and ring [fingers] and [the] left long and ring [fingers], disabling." (*Id*. at 180.) Dr. Lane recommended surgery for both hands. (*Id*.) On August 30, 2000, Plaintiff had the recommended surgery at North Shore University Hospital. (A.R. 349–51.)

On February 27, 2002 and March 13, 2002, Plaintiff saw Dr. Stephen Huish for his

---

[3] Any disease or abnormality of a dorsal or ventral spinal nerve root from the point where it merges with the spinal cord to the point where it joins its companion root to form a spinal nerve. 5 SCHMIDT at R-11.

[4] A structure consisting of muscle and tendon fibers blending with the upper half of the capsule of the shoulder joint. 5 SCHMIDT at R-195.

[5] Impingement is a common condition affecting the shoulder that is often seen in aging adults and that is closely related to shoulder bursitis and rotator cuff tendonitis. MedicineNet, Health and Medical Information Produced by Doctors, *available at* http://www.medicinenet.com/impingement_syndrome/article.htm [hereinafter "MedicineNet"].

[6] The first annular ligament. Annular ligaments are circular bands of fibrous tissue of the sheaths of the fingers attached to the bones of the fingers. 1 SCHMIDT at A-381.

[7] A finger condition caused by chronic inflammation of the tendon sheath in which flexion and extension is accomplished with a jerk. 6 SCHMIDT at T-245.

shoulder injury. (A.R. 168–70.) Dr. Huish reviewed an MRI and found hypertrophy[8] of the acromioclavicular joint[9] with degenerative changes resulting in impingement of the rotator cuff tendon. (*Id.* at 168.) He noted tenderness over the bicipital groove[10] and over the acromioclavicular joint. (*Id.*) Dr. Huish opined that Plaintiff had a permanent twenty-five percent loss of use of the right shoulder. (*Id.*)

Plaintiff's employer's insurance company requested that Plaintiff submit to an orthopedic examination on May 29, 2002. (A.R. 175.) On that day, Plaintiff saw Dr. Armand Prisco, an orthopedic surgeon, whose impression was that Plaintiff had a "chronic cervical sprain" and "traumatic synovitis[11] of the right shoulder." (*Id.* at 171–75.) He reported no disability and found a seven and a half percent schedule loss of use of the right shoulder and "questionable tenderness." (*Id.* at 172–73.)

In June 2003, Plaintiff saw Dr. Thomas Scilaris, his consulting orthopedist, for an assessment of his hands. (A.R. 166–67.) Dr. Scilaris indicated that Plaintiff had "mild tenderness on the left hand more than the right hand," "tenderness quite exquisitely at the A-1 pulley," and a permanent thirty percent loss of use of his hands bilaterally. (*Id.*) He assessed "status post trigger finger of bilateral hands of the ring and long fingers with residual pain and triggering of the little fingers." (*Id.* at 166.)

On October 7, 2005, Dr. Donald Forman, who had treated plaintiff since the September

---

[8] An abnormal enlargement of an organ due to increase in the size of its cells. Usually a compensating mechanism, to enable the organ to perform more work than its normal structure would allow. 3 SCHMIDT at H-258.

[9] A joint connecting the outer end of the collarbone with the shoulder blade. 1 SCHMIDT at A-92.

[10] A deep groove in the front surface of the upper end of the humerous, the bone between the shoulder and the elbow. 1 SCHMIDT at B-91.

[11] Inflammation of the membrane lining the interior of a joint. 5 SCHMIDT at S-445.

2005 forklift accident, saw Plaintiff and ordered a number of x-rays. (A.R. 239–40.) Dr. Forman found limited forward flexion and limited extension, found that Patrick's test[12] was limited, and that all motions were painful. (*Id.* at 240.) He concluded that Plaintiff had a sprain of both the cervical and lumbosacral spine and was "totally disabled." (*Id.*) Dr. Forman prescribed Flexeril[13] and instructed Plaintiff to return in a week. (*Id*.) On October 14, 2005, he again found Plaintiff to be totally disabled and instructed Plaintiff to attend physical therapy three times a week for six weeks. (*Id*. at 236.) On subsequent visits, between October 2005 and March 2007, Dr. Forman continued to find that Plaintiff was totally disabled. (A.R. 210–11, 215–16, 219–20, 223–24, 227–28, 231–32, 397, 398.) On February 6, 2006, Dr. Forman found that all of Plaintiff's motions were painful and instructed Plaintiff to continue physical therapy. (*Id*. at 210.) On February 21, 2006, an MRI of the lumbar spine revealed "mild desiccation[14] of the invertebral discs at the L3-4 and L5-S1 levels with no focal disc protrusions or extrusions," and "no evidence of stenosis,[15] disc herniation, or bulge." (*Id*. at 249.) A cervical spine MRI showed straightening of the normal cervical lordosis[16] and spondyloarthropathy,[17] which contributes to

---

[12] A test that helps to distinguish arthritis of the hip joint from sciatica. With the patient lying on his back, the thigh and the knee are bent, and the "knuckle" on the outer side of the ankle is placed on or above the kneecap of the other leg. The knee of the flexed leg is pressed down, and if this causes pain, it is assumed that the condition involved is arthritis of the hip joint. 4 SCHMIDT at P-111.

[13] Commercial name for Cyclobenzaprine hydrochloride, a drug indicated as an adjunct to rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions. RxList, *http://www.rxlist.com/flexeril-drug.htm.*

[14] The act of drying thoroughly. 2 SCHMIDT at D-83.

[15] The abnormal narrowing of a body passage. 5 SCHMIDT at S-291.

[16] Inward curvature of the spine. *See generally* MedicineNet.

[17] A disease of the spinal joints. 5 SCHMIDT at S-262.

multi-level neural foraminal[18] narrowing and a moderate to marked central stenosis. (*Id*. at 250–51.)

Dr. Eduardo Alvarez, an orthopedic surgeon, examined Plaintiff on November 26, 2005 for complaints of headaches, dizziness, nervousness, constant pain, neck and back stiffness, occasional radiation of pain in the right arm and shoulder, and numbness and weakness in both legs. (A.R. 151–55.) Dr. Alvarez examined Plaintiff on behalf of Sedgewick, the worker's compensation insurance carrier for plaintiff's employer, and did not review any medical records. (*Id*. at 151, 153.) He noted reduced range of motion in the neck, mild reduction for cervical flexion and extension with a loss of ten degrees of each. (A.R. 153.) In addition, there was reduction of lateral bending on the right, reduced to twenty degrees of the normal forty-five degrees, while lateral bending was reduced to thirty-five degrees on the left. (*Id*.) Dr. Alvarez found that rotation was decreased to thirty-five degrees of the normal eighty degrees on the right side, and was reduced to sixty degrees on the left side. (*Id*.) Also, palpitation elicited cervical tenderness and the foraminal compression test was bilaterally positive. (*Id*.) Finally, his examination of the lumbosacral spine showed loss of range of motion and there was an area of "hypesthesia[19] over the outer aspect of the right hand and the medial aspect of the left leg and foot." (*Id*. at 153.) Dr. Alvarez diagnosed a "sprain/strain" of both the cervicothoracic spine and the lumbosacral spine. (A.R. 153.) He assessed Plaintiff's disability as a moderate partial ongoing disability. (*Id*. at 154.) According to Dr. Alvarez, Plaintiff could return to work on light duty with maximum lifting, grasping, pushing and pulling of twenty pounds, and with restrictions on repeated and sustained bending, lifting and twisting motions of the lower back. (*Id*.) On February 6, 2006, Dr. Alvarez reviewed additional records and his opinion remained

---

[18] Pertaining to a natural opening in a bone. 2 SCHMIDT at F-152.

[19] Decreased sensitivity to stimulation. 3 SCHMIDT at H-260.

unchanged. (*Id*. at 147–49.) He reviewed various medical reports but there is no mention of his review of a MRI. (*Id*. at 148.)

Plaintiff received physical therapy from April to June 2006. (A.R. 375–87.) A June 29, 2006 progress note reported forty percent overall improvement, with improved sleep, tolerance to static sitting and gait, and overall improvement in performance of daily living. (*Id*. at 375.) Physical therapist James Macaluso completed a "Medical Source Statement of Ability to Do Work Related Activities" on February 14, 2007. (*Id*. at 368–73.) The statement indicated that Plaintiff could frequently lift up to twenty pounds, occasionally carry up to twenty pounds, frequently carry up to ten pounds, could never lift or carry more than twenty pounds, could sit for two hours, and could stand and walk one hour each without interruption. (*Id*. at 368–69.) During an eight-hour workday, the statement indicated Plaintiff was capable of sitting for four hours, standing for two hours, and walking for two hours. (*Id*. at 369.) Mr. Macaluso indicated that Plaintiff could occasionally reach overhead, push and pull; it also indicated that he could frequently reach, handle, finger, and feel with both hands, but that none of these could be done continuously. (A.R. 369.) Plaintiff occasionally was able to operate foot controls, climb stairs, balance, and kneel, but could not climb ladders, stoop, crouch, or crawl. (*Id*. at 371.) Finally, Mr. Macaluso said that Plaintiff was able to shop, travel without a companion, ambulate without assistive devices, walk on rough surfaces, use public transportation, climb stairs using a hand rail, prepare a simple meal, care for his personal hygiene, and sort and handle paper files. (*Id*. at 373.)

Dr. Forman completed a medical assessment questionnaire on August 7, 2006. (A.R. 193–97.) He diagnosed Plaintiff as having a sprain of the cervical and lumbar spine. (*Id*. at 193.) He stated that Plaintiff could walk two blocks without resting and could sit or stand for an hour.

(*Id*. at 194–95.) He also noted that, during an eight-hour workday, Plaintiff must walk every ten minutes. (*Id*. at 195.) Dr. Forman further noted that Plaintiff needed a job that allowed shifting at will between standing, sitting, and walking and that also allowed unscheduled breaks longer than ten minutes. (*Id*.) He said Plaintiff could occasionally lift ten pounds, reach overhead twenty percent and bend and twist twenty percent of the workday. (*Id*. at 196.) Finally, Dr. Forman indicated that the impairments would cause absence from work, that pain would frequently interfere with attention and concentration, and that Plaintiff had a marked limitation in his ability to handle work stress. (A.R. 194, 196–97.) Plaintiff most recently visited Dr. Forman on March 23, 2007, when Dr. Forman again concluded that Plaintiff was "totally disabled." (*Id*. at 397.)

### 2. Non-Treating Consultative Examiners

The ALJ consulted several doctors from Industrial Medicine Associates in Queens, New York in March and April of 2006 about Plaintiff's case. (A.R. 259–71.) The first of these, Dr. Herbert Meadows, gave Plaintiff a consultative psychiatric examination on March 20, 2006. (*Id*. at 259–62.) Dr. Meadows diagnosed Plaintiff with adjustment disorder, mixed anxiety, and depressed mood, finding that individual psychological intervention would be helpful. (*Id.* at 262.) He stated Plaintiff was "capable of following simple directions, performing small tasks independently, maintaining attention and concentration, maintaining a regular schedule, learning new tasks, performing complex tasks independently, making appropriate decisions, relating adequately with others, and appropriately dealing with stress." (*Id*. at 261.) Dr. Meadows concluded the "results of the examination appear to be consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with [Plaintiff]'s ability to function on a daily basis." (*Id*.)

Dr. Steven Calvino performed a consultative orthopedic examination of Plaintiff on

March 24, 2006. (A.R. 263–66.) He found Plaintiff able to walk on his heels and toes, squat, change for the examination, and get on and off the examination table. (*Id.*) Dr. Calvino also found that Plaintiff's gait and station were normal and his hand and finger dexterity were intact with normal grip strength. (*Id.*) His examination of the cervical, thoracic and lumbar spines revealed full flexion, extension, and rotary movement bilaterally with no cervical, paracervical, spinal or paraspinal pain or spasm. (*Id.* at 265.) Dr. Calvino found that Plaintiff exhibited full range of motion in the upper and lower extremities, with normal strength in the proximal and distal muscles, and no evidence of atrophy, sensory abnormality, or joint effusion. (*Id.*) He diagnosed "myofascial neck pain, back pain, rotator cuff tear, right, per history, bilateral trigger finger status post repair, hypertension per history, mitral valve per history," and concluded that plaintiff had "no restrictions." (*Id.*)

Dr. Jonathan Wahl performed a consultative internal medicine examination of plaintiff on April 6, 2006. (A.R. 267–71.) He indicated that Plaintiff appeared to be in no acute distress and that he was able to squat and stand without the use of an assistive device. (*Id.* at 268.) He noted minor discomfort with rotation of the cervical spine to the right and left sides at eighty degrees or greater. (*Id.* at 269.) Dr. Wahl found no scoliosis, kyphosis,[20] or abnormality in the thoracic spine. (*Id.*) He noted that Plaintiff had full flexion, extension, lateral flexion, full rotary movement in the lumbar spine, full range of motion, and normal strength in the upper and lower extremities with no motor or sensory deficits. (*Id.*) He added that the straight leg raising test was negative and all tendon reflexes were physiologic and equal. (*Id.* at 269.) He also found that Plaintiff's hand and finger dexterity were intact and grip was normal with pain. (A.R. 270.)

Dr. Wahl diagnosed Plaintiff with "back pain, likely secondary to lumbar musculotendinous involvement, neck pain, likely secondary to cervical diskogenic disease,

---

[20] A hump in the spine. 3 SCHMIDT at K-54.

bilateral hand pain, likely secondary to arthralgias,[21] [and] hypertension." (*Id.*) He concluded that Plaintiff has "a minimal to moderate limitation for rotary type movements of the head and neck over eighty degrees bilaterally" and advised that Plaintiff "avoid prolonged standing and sitting when his lower back pain flares." (*Id.*)

## II. DISCUSSION

### A. Legal Standards

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 1383(c)(3). A district court reviewing the final determination of the Commissioner must determine whether the ALJ applied the correct legal standards and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (internal quotation marks omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

---

[21] Pain in a joint. 1 SCHMIDT at A-538.

11

As the Act is a remedial statute, the intention of which is inclusion rather than exclusion, "courts have not hesitated to remand for the taking of additional evidence, on good cause shown, where relevant, probative and available evidence was either not before the [Commissioner] or was not explicitly weighed and considered by him, although such consideration was necessary to a just determination of a claimant's application." *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975). A remand for further proceedings is likewise appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). Remand is also warranted where there are gaps in the administrative record. *Pratts v. Chater*, 94 F.3d 34, 36 (2d Cir. 1996); *see also* 20 C.F.R. § 416.912(d) (ALJs must develop claimants' "complete medical history" and "make every reasonable effort" to help them obtain any required medical reports); *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (ALJs have duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings").

In order to receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), 423(d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence that the Commissioner may

require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Act as set forth in 20 C.F.R. § 404.1520. If at any step the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. § 404.1520(b). Second, the ALJ considers whether the claimant has a "severe impairment" without reference to age, education, or work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental "ability to conduct basic work activities." 20 C.F.R. § 404.1520(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or is equal to an impairment listed in Appendix 1. *See* 20 C.F.R. § 404.1520(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity ("RFC") in steps four and five. 20 C.F.R. § 404.1520(e). In the fourth step, the claimant is not disabled if he or she is able to perform "past relevant work." 20 C.F.R. § 404.1520(e). Finally, in step five, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(f). During step five, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing *Carroll*, 705 F.2d at 642).

**B.     The ALJ's Decision**

On March 26, 2007, the ALJ issued a written decision, finding that Plaintiff was ineligible for SSI payments because he was not disabled within the meaning of the Act. (A.R.

24.) The ALJ utilized the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 to reach this conclusion. At step one, the ALJ concluded that Plaintiff was not engaged in substantial gainful activity during the relevant period. (*Id*. at 19.) At step two, the ALJ found that Plaintiff had severe impairments of the cervical spine, lumbar spine, and bilateral finger impairments. (*Id*.) At step three, the ALJ determined that these impairments, either singly or in combination, did not meet the criteria of impairments contained in Appendix 1 to 20 C.F.R., Part 404, Subpart P. (*Id.* at 20.)

At step four, the ALJ found that Plaintiff retained the RFC to "lift light objects and sit, stand and walk on an alternating basis but is unable to perform overhead pushing, pull or reaching on more than an occasional basis, or fingering that requires the index fingers." (A.R. 20.) The ALJ concluded that Plaintiff could only "perform work at a light level of exertion," which precluded him from performing his past relevant work as a utility worker and forklift operator in a warehouse "since this job involved heavy lifting." (*Id*. at 22.) The ALJ next proceeded to step five and, based on the Medical-Vocational guidelines contained in Appendix 2 to 20 C.F.R., Part 404, Subpart P, found that Plaintiff could do other work. (*Id*. at 23.) Accordingly, the ALJ found Plaintiff had not been under a disability, as defined in the Act, from September 29, 2005 through the date of the decision. (*Id*.)

### C. Opinion of Plaintiff's Treating Physician

A treating physician is a claimant's "own physician, osteopath or psychologist (including an outpatient clinic and health maintenance organization) who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." *Schisler v. Bowen*, 851 F.2d 43, 46 (2d Cir. 1988). A treating physician's opinion "is given controlling weight if it is well supported by medical findings and

not inconsistent with other substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)). If an ALJ determines that a treating physician's opinion should *not* be given controlling weight, the proper weight accorded depends upon several factors: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark*, 143 F.3d at 118 (citing 20 C.F.R. § 404.1527(d)); *see also id.* (noting that these factors "*must* be considered") (emphasis added). ALJs must "give good reasons" as to the weight accorded to a treating physician's opinion. *Id*.

Here, it is uncontested that Dr. Forman, who assessed Plaintiff as "totally disabled" on multiple occasions, was Plaintiff's treating physician. However, the ALJ declined to accord Dr. Forman's assessment controlling, or even "great," weight. (A.R. 22.) In making this decision, the ALJ did not take into consideration two of the relevant factors: "the frequency of examination and the length, nature, and extent of the treatment relationship," and "whether the opinion [was] from a specialist." *Clark*, 143 F.3d at 118. Both factors weigh heavily in favor of according Dr. Forman's opinion substantial weight, as he treated Plaintiff with more frequency than any other physician, and did so as a specialist in "orthopedic surgery." (*See generally* A.R. 210–32, 397–98.) As consideration of these factors is mandatory, the ALJ's lapse mandates remand.

The ALJ did consider the evidence in support of Dr. Forman's opinion, but found that Dr. Forman "has not provided significant positive findings." (A.R. 22.) Such a finding at a minimum warranted affirmative development of the record. *See* 20 C.F.R. § 416.912(e) ("[W]e will first recontact your treating physician . . . to determine whether the additional information we need is readily available"); *see also Rosa*, 168 F.3d at 80 (remanding where ALJ missed a "host of . . .

opportunities" to develop record before rejecting disability finding of treating physician); *Clark*, 143 F.3d at 118 ("[F]ailure to include . . . support for the findings in [the treating physician's] report does not mean that such support does not exist; [the treating physician] might not have provided this information . . . because he did not know that the ALJ would consider it critical to the disposition of the case."). The ALJ also discounted Dr. Forman's opinion because "the limitations he reports appear to be based primarily on the claimant's complaints of pain." (A.R. 22.) However, the Second Circuit has held that "a [plaintiff]'s testimony about pain . . . is not only probative on the issue of disability, but may serve as the basis for establishing disability, *even when such pain is unaccompanied by positive clinical findings or other objective medical evidence*." *Echevarria*, 685 F.2d at 755 (emphasis added) (citations and internal quotation marks omitted).

The ALJ also considered whether Dr. Forman's opinion was "consisten[t] with the record as a whole," *Clark*, 143 F.3d at 118, and found it to be "contradicted by the findings of the consultative examiner as well as [Plaintiff's] own physical therapist." (A.R. 22.) With respect to the former, Dr. Alvarez examined Plaintiff just once and did not review the 2006 MRI report characterizing the central stenosis as "moderate to marked." (*See* A.R. 147–48, 153, 250–51.) With respect to the latter, as a physical therapist, Mr. Macaluso was not an "acceptable medical source[] [who could] establish whether [Plaintiff] ha[d] a medically determinable impairment[]." *See* 20 C.F.R. § 404.1513(a). The Commissioner argues that Dr. Forman's opinion that Plaintiff "was limited to occasionally lifting ten pounds" is inconsistent with the findings of Drs. Alvarez, Calvino, and Wahl, who opined that Plaintiff could lift up to twenty pounds. (*See* Def. Mem. 21.) However, this argument is belied by the record, which reflects only *Dr. Alvarez's* assessment of Plaintiff's ability to lift twenty pounds. (*See* A.R. 154, 256, 270.) Furthermore, Dr. Wahl advised

Plaintiff to "avoid prolonged standing and sitting when his lower back pain flares," which actually corroborates Dr. Forman's opinion. (*Compare* A.R. 267–71 *with id.* at 194–95 (indicating that Plaintiff could only sit or stand continuously for one hour).) Dr. Wahl also found a "limitation for rotary type movements of the head and neck" that was similarly consistent with Dr. Forman's opinion. (*Compare* A.R. 270 *with id.* at 210–39, 397–98.)

## III.   CONCLUSION

Because the ALJ discounted a treating physician's opinion without fully or accurately examining all of the relevant factors, this case is remanded to the Commissioner for further evidentiary proceedings, pursuant to the fourth sentence of 42 U.S.C. § 405(g). Upon remand, the Commissioner is directed to further develop the record with respect to Dr. Forman, and "give good reasons" for whatever weight is accorded his opinion. *See Clark*, 143 F.3d at 118 (citing 20 C.F.R. § 404.1527(d)). The Commissioner is directed to prevent further delay in the processing of Plaintiff's case, and to expedite the additional administrative proceedings. If Plaintiff's benefits remain denied, the Commissioner is directed to render a final decision within sixty days of Plaintiff's appeal, if any. *See Butts v. Barnhart*, 388 F.3d 377, 388 (2d Cir. 2004) (suggesting procedural time limits to ensure speedy disposition of Social Security cases upon remand by district courts).

SO ORDERED.

DATED:   Brooklyn, New York
             September 29, 2010

/s/
DORA L. IRIZARRY
United States District Judge